## McGEISEY v. CHILCOAT et al.

No. 19836. Opinion Filed April 8, 1930.

A. M. Beets and L. E. Neff, for plaintiff in error.

Norvell & Norvell, for defendant in error Walter D. Chilcoat.

William H. Zwick and H. E. Oakes, for defendant in error Marland Oil Company of Oklahoma.

J. H. Hill, John R. Ramsey, B. W. Grif-

fith, and Sol H. Kauffman and (Harry T. Klein, of counsel), for defendant in error the Texas Company.

DIFFENDAFFER, C. This case was commenced by plaintiff in error against Walter D. Chilcoat and the Texas Company for the purpose of establishing and recovering an interest in certain lands in Seminole county. A number of other parties were subsequently brought in.

The land involved was the surplus allotment of one Scipio, a full-blood Seminole Indian, enrolled opposite No. 1310. Scipio died intestate after the admission of Oklahoma to statehood, thus casting the descent under the laws of the state of Oklahoma. It is conceded that Scipio left surviving him his widow and four children. One of the children died in infancy. Plaintiff in error also claims to be a child and heir at law of Scipio.

Plaintiff in error's mother was Hannah Bruner, a full-blood Creek Indian. The claim of plaintiff in error is that Hannah Bruner and Scipio were, at one time, husband and wife, and that she was the child of such marriage.

Defendants in error claim through the widow, Flora Fish, and guardian's deed from the three children admitted to be the legitimate children of Scipio, and specifically deny that plaintiff in error was the legitimate child of Scipio, or that, if an illegitimate child, she was ever adopted by Scipio within the provisions of section 8057, C. O. S. 1921.

A jury was waived and the cause was tried to the court, resulting in findings and judgment adverse to plaintiff from which she appeals.

There are four assignments of error, but they are all presented together under one proposition.

It is conceded that this is a law action, and is governed by the rule that the findings of the court have the same force and effect as the verdict of a jury, as to the facts, and where there is evidence reasonably tending to support the findings of the trial court, such findings will not be disturbed by the court.

The contention of plaintiff in error is that there is no competent nor credible evidence reasonably tending to support the findings and judgment.

By the journal entry of judgment, the finding is general in favor of defendants, but at the close of the evidence, argument

having been waived, the trial court commented somewhat at length on the case, and after stating the theory of plaintiff as the court gathered from the evidence, it then stated the theory of defendants; and commented somewhat at length upon the law of marriage, etc., and the character of proof necessary to establish marriage; upon the habits, customs, and views of Indians relative to the marriage relation; and treatment of, and affection for, their offspring, whether legitimate or otherwise, and concludes:

"The court finds that there is no marriage between Scipio and Hannah Bruner.

"The court further finds that the testimony is insufficient to establish the legitimation of Mary McGeisey by Scipio whom the plaintiff claims to be the putative father. The testimony is insufficient as to that in the face of the statute. Scipio is dead. He did not say that he took her into his house and treated her as his child, and Flora Fish, his acknowledged to be lawful wife, at the time the allottee Scipio visited at the home, is dead, and the evidence necessary is insufficient to create that relationship by making him the putative father, or the legitimate father of an illegitimate child.

"There is not a single relative testified to the marriage or to the legitimation. I think, however, that Scipio was the father of Mary McGeisey—what I think about it. This is the reason I come to that conclusion, that on the 3rd day of June, 1901, Hannah Bruner made an affidavit to be used in the allotment of Mary that her name was Mary Scipio. Lizzie White was there, she was living there, and in support of that affidavit, as the midwife, stated that Mary Scipio was named Mary Scipio, and I think that Mary Scipio is the illegitimate child of Scipio, the allottee in this case, but I do not think she is the legitimate child, and by reason thereof could not inherit."

Plaintiff in error contends that, by this statement, the court found that Scipio was the father of plaintiff, Mary McGeisey, and that having thus found, the presumption of legitimacy attached, and that this presumption was not overcome by sufficient evidence, and therefore the judgment should have been for plaintiff. She further complains that the court placed the burden upon her to establish legitimacy. The latter assertion is not borne out by the record.

Defendants in error contend that this statement of the court, made as it was, and not thereafter incorporated in the journal entry, is not properly a part of the case-made, and cannot be considered here as any part of the findings.

Defendants find support for this conten-

tion in Guss v. Nelson, 14 Okla. 296, 78 Pac. 170; Gates v. Settlers, etc., Co., 19 Okla. 83, 91 Pac. 856; Holt v. Spicer, 65 Okla. 17, 162 Pac. 686; James v. Coleman, 64 Okla. 99, 166 Pac. 210; Ruby v. Warrior, 71 Okla. 82, 175 Pac. 355; Watashe v. Tiger, 88 Okla. 77, 211 Pac. 415; and Dixon v. Stoetzel, 136 Okla. 302, 276 Pac. 730.

Under the rule so well established, we would be justified in saying that these remarks were not properly in the case-made, and could not be considered as a part of the findings of the trial court.

Plaintiff in error asserts that the trial court purposely made this statement with the intent that it be made a part of the record, and with the intent that this court so treat it in case of appeal, and call our attention to the preliminary remark of the trial court as follows:

"In order that the Supreme Court may properly understand the issues and the theories of the parties, and to enable them, without a diligent search of the entire record and go directly to the issues presented to this court, it is the theory of the plaintiff as the court gathers from the evidence."

In view of the well-established rule that such remarks are not a proper part of the record unless incorporated in the journal entry, the trial court could have accomplished its apparent purpose much better had it incorporated the statements intended to be made for the benefit of this court in the journal entry. Then there would have been no controversy over whether or not the trial court found that plaintiff was the child of Scipio. However, for the purpose of this case, and without adopting it as a rule, we deem it appropriate to consider the statement properly within the record, and conclude that the court was amply supported by the evidence in its findings that Scipio was the father of plaintiff. We likewise conclude that there is abundant competent evidence to support the further finding that she was the illegitimate child of Scipio.

The affidavit of birth, made by Hannah Bruner, at the time she sought the enrollment of her child, plaintiff herein, shows this. This affidavit was made upon a form apparently intended for the use of married women in making proof of birth of their children in connection with their enrollment. It was made on the 3rd day of June, 1901, when plaintiff, then a child, was less than two years of age. In it she did not claim to be the wife of Scipio. The words: "I am the lawful wife of" were stricken out, and the affidavit made to conform to the very apparent facts, by saying "that by Scipio, who is a citizen by blood of the Seminole nation, a female child was born to me on the 15th day of December, 1899; that said child has been named Mary Scipio, and is now living." This, of course, could have been true, and Hannah Bruner could have been the lawful wife of Scipio ten months, or less, prior to the birth of the child, and divorced in the meantime. If this had been the fact, it would have been quite natural for her to describe herself as the "former wife" or the divorced wife of Scipio.

In addition to this is the corroborating affidavit of Lizzie White, the aunt of Hannah Bruner, at whose house the child was born and who attended on Hannah Bruner as midwife when the child was born, as follows:

"Affidavit of Atttending Physician, or Midwife.

"United States of America,
    "Indian Territory,
"Northern District.

"I, Lizzie White, a midwife, on oath, state that I attended on Mrs. Hannah Bruner, wife of no one on the 15th day of December, 1899, that there was born to her on said date a female child; that said child is now living and is said to have been named Mary Scipio.
                                           her
                          "Lizzie X White
                                          mark
"Witnesses to mark: (Must be two witnesses.)
                          "Philip B. Hopkins
                          "Robt. W. Stewart.

"Subscribed and sworn to before me this 3rd day of June, 1901.
"(Seal.)   Philip B. Hopkins, Notary Public."

Of course, these affidavits are not conclusive proof that the child was illegitimate, but we are unable to understand how any other conclusion could reasonably have been reached, when these affidavits are taken and considered with all the other evidence in the record, of which there is an abundance, supporting this conclusion.

The evidence as to adoption or legitimization is at best conflicting, and the findings thereon will not be disturbed.

We have carefully examined the entire record, and find that there is ample competent evidence to support the findings and judgment.

The judgment should be affirmed.

BENNETT, HERR, HALL, and EAGLE-TON, Commissioners, concur.

By the Court: It is so ordered.